# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELITE MOTORSPORTS, LLC, an Oklahoma Limited Liability Company, *Plaintiff*, v. RLB CONSTRUCTION, LIMITED, d/b/a ROOFTEC, a Texas Limited Partnership, and RELIABILE RESOURCES, LLC, d/b/a/ RBR MACHINE, LTD, a Texas Limited Liability Company, *Defendants*. | Case No. CIV-19-901-D |

## O R D E R

This matter comes before the Court on Defendants' Motion to Dismiss [Doc. No. 13] for lack of jurisdiction, or in the alternative to transfer venue. Plaintiff has filed a Response in Opposition [Doc. No. 17], to which Defendants have replied [Doc. No. 22]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiff is an Oklahoma limited liability company, with its principal place of business in Garvin County, Oklahoma. Petition [Doc. No. 1-2], at 2. Rooftec is a Texas limited partnership, and RBR Machine is a Texas limited liability company. *Id*. This action was filed in an Oklahoma state district court and removed to federal court pursuant to 28 U.S.C. §§1332, 1441, 1446. The Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332.

1

Sometime in December of 2018, the parties allegedly entered into a contract whereby Plaintiff agreed to provide a "competitive race car and furnish all equipment and personnel necessary," for the duration of 18 races. Complaint [Doc. No. 1-2] at ¶¶ 7–8. The races were all to take place between February 2019 and November 2019. *Id*. None of the races for the 2019 racing season were scheduled to take place (or did take place) in the state of Oklahoma. *See* Brogdon Dec. [Doc. No. 13-1].

Both parties allege the other failed to perform its obligations under the contract at issue. *See* Motion at 3; Response at 1. Defendants move to dismiss this action pursuant to FED. R. CIV. P. 12(b)(2), asserting the Court lacks personal jurisdiction over them. Motion at 11. In the alternative, Defendants move the Court to transfer venue to the Southern District of Texas, in the interest of justice.

## STANDARD OF DECISION

To establish whether the exercise of personal jurisdiction over a defendant is proper, federal courts sitting in diversity must engage a two-step inquiry. *Harris v. Am. Int'l Grp., Inc.,* 923 F. Supp. 2d 1299, 1303 (W.D. Okla. 2013) (DeGiusti, J.). The courts must determine whether the exercise of jurisdiction is consistent with: (1) the long-arm statute of the forum state; and, (2) the due process clause of the fourteenth amendment. *McClelland v. Watling Ladder Co.,* 729 F. Supp. 1316, 1318 (W.D. Okla. 1990). Because Oklahoma's long-arm statute has been interpreted to reach the full extent of due process, in Oklahoma, that test becomes a single inquiry. *Rambo v. Am. South. Ins. Co.,* 839 F.2d 1415, 1416 (10th Cir. 1988). The Court's analysis will therefore focus on whether

exercising personal jurisdiction over Defendants would offend due process under the United States Constitution.

## DISCUSSION

A defendant may move to dismiss for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2). Once personal jurisdiction is challenged by the defendant, the plaintiff "bears the burden of demonstrating that personal jurisdiction exists in the forum." *Skillings v. Crowder*, No. 17-cv-572-JED-JFJ, 2019 U.S. Dist. LEXIS 49900, at *4 (N.D. Okla. Mar. 26, 2019).

The Supreme Court has recognized two ways for a forum to assert jurisdiction over an out-of-state defendant: through an exercise of either general or specific jurisdiction. Sufficient minimum contacts might be established when some entity has contacts "so substantial and of such a nature" with a forum that such would allow for amenability to suit without offending due process. Those contacts need not have anything to do with case at issue. This would allow for the exercise of general jurisdiction, concerned with the connection between the forum and the defendant itself. *Daimler AG v. Bauman*, 571 U.S. 117 (2014).

General jurisdiction contrasts with specific jurisdiction, which is concerned with the connection between the forum and the underlying controversy. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15 (1985). Under a theory of specific jurisdiction, minimum contacts might arise from contact directly related to the cause of action, should that contact suffice to make the defendant amendable to suit. *Id.*

**I.** **Defendants are not constitutionally amendable to suit under a theory of general jurisdiction, as neither their principal places of business nor places of incorporation are in Oklahoma.**

In some cases, contacts with a forum may be "so substantial and of such a nature" that—though they might be unrelated to the suit—they would still allow for amenability without offending due process. *Bauman,* 571 U.S. at 117.

The Supreme Court has limited the forum affiliations that would render a defendant amenable to general jurisdiction. To be constitutionally amendable to suit under this theory, a defendant must be deemed to be "at home" in the forum state. *Id*. at 127. A corporation is at home in its place of incorporation and its principal place of business. *Id.* A corporation's principal place of business is its "nerve center," or the place where it's operational corporate headquarters sit. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). In very limited instances, operations in a forum other than place of incorporation or principal place of business may be "so substantial and of such a nature as to render the corporation at home in that State." *Bauman*, 571 U.S. at 138.

There is no dispute that Defendants, here, are a Texas limited partnership and a Texas limited liability company. Defendants have their principal place of business in Texas, and there is no argument made by Plaintiff that Defendants' contacts with Oklahoma are "so substantial and of such a nature" as to render Defendants essentially at home in the forum state. *Id*.

If an exercise of personal jurisdiction is proper over Defendants at all, it must be an exercise of specific jurisdiction, as asserting general jurisdiction over these foreign Defendants would offend traditional notions of fair play and substantial justice.

**II.     The Court may exercise specific jurisdiction over Defendants, as minimum contacts with the forum have been established and it would be reasonable to do so under the circumstances.**

For an exercise of specific jurisdiction to be constitutionally proper, the Court must find: (1) that minimum contacts with the forum have been established; and, (2) that the exercise of jurisdiction would be reasonable.

### A.  Minimum Contacts

Plaintiff argues that the Court should exercise specific jurisdiction over Defendants as Defendants: (1) initially contacted and solicited Plaintiff's unique services in Oklahoma; (2) carried out negotiations with Plaintiff's representative, who was located in Oklahoma; (3) reached the final agreement by phone with Plaintiff's representative located in Oklahoma; (4) transmitted the relevant signature pages to Plaintiff's offices in Oklahoma; (5) travelled to Oklahoma so that Plaintiff could customize and fit the race car according to the necessary specifications; (6) used equipment that was originally from Oklahoma and subsequently returned that equipment to Oklahoma; and, (7) exchanged several text messages and telephone calls with Plaintiff's representatives who were located in Oklahoma. Response at 8.

The constitutional amenability test for specific jurisdiction is a two-part test outlined in detail in *Burger King v. Rudzewicz.* 471 U.S. at 474. The first step is establishing

minimum contacts with the state where the action is brought. *Id*. These contacts must be purposefully directed at the forum state, meaning the defendant has deliberately engaged in the conduct from which the contacts arise. *Id.* These contacts must also make it foreseeable to the defendant that he would be sued in the state where the suit was brought. *Id*. at 476. Jurisdiction should not be based on random, fortuitous, or attenuated contacts made with other people affiliated with the state. *Id*. at 480.

For a breach of contract case, to fulfill the minimum contacts requirement, the Supreme Court looked to, among other things: (1) prior negations; (2) future consequences of the contract; (3) the terms of the contract; and, (4) actual course of dealing. *Id*. at 479.

In *Burger King,* the Supreme Court affirmed a district court's assertion of personal jurisdiction over a defendant in a suit for breach of contract. *Id*. at 478. The defendant had no physical ties to Florida, the forum state, and had only visited the state briefly to attend a training course related to the contract at issue. *Id*. at 480. The defendant reached out to the corporation located in Florida and negotiated the disputed contracts, so that it might set up a franchise elsewhere. *Id*. The Supreme Court noted that, as such, negotiations took place in the state where suit was brought. By failing to make the payments under the contract, the defendant could foresee injuries to the corporation in the forum state. *Id.*

Defendants, here, are correct that an individual's contract with an out-of-state party *alone* is insufficient to establish minimum contacts in the other party's home forum. *Burger King*, 471 U.S. 462 at 478. The fact that Oklahoma is Plaintiff's home forum is not necessarily decisive, here. Defendants, like the defendant in *Burger King*, however, reached out beyond Texas and "negotiated with an [Oklahoma] corporation" for the

6

purchase of a long-term service. *Id.* The negotiated-for services would be—at least in part—performed in Oklahoma. Although not conclusive, this interaction is itself "some evidence suggesting purposeful availment." *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005). The defendant in *Burger King* had only one very limited physical contact with the forum state; likewise, Defendants here had been physically present in Oklahoma to have the cars customized for the races. *Burger King*, 471 U.S. at 478. Defendants argue that the consequences of the contract were to take place outside of Oklahoma and at races around the country. Reply at 5. But this is again like *Burger King* in that the franchise to be opened in *Burger King* was not to be opened in the forum state. Rather, it was the continuing relationship with a plaintiff who would have to perform its obligations in the forum that that gave rise to the requisite minimum contacts.

The Tenth Circuit, in *Pro Axess, Inc. v. Orlux Distribution, Inc.*, found a foreign defendant established minimum contacts with a forum where services necessary to a contract were to be performed in the forum state. 428 F.3d at 1277. Although the manufacturing and shipping of the product did not take place in the forum state, "[s]uch services included choosing a manufacturer . . . arranging for rough handmade models to be made into machined prototypes, arranging the details for the manufacture [and inspection] of the frames . . . invoicing and coordinating the manufacturing process, and arranging for the shipping of the frames . . . ." *Id.* Like in *Pro Axes*, fulfilling the contract at issue here "required a continuing relationship based on the provision of services." *Id.* at 1278. And like in *Pro Axes*, services necessary to the contract—namely customizing the race cars and

7

the storing and shipping of equipment to be used in the races—were performed in Oklahoma. Reply at 6.

Further, Defendants are certainly correct that text messages and calls alone are insufficient to establish purposeful availment. *See Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995) (emphasis added). But it is the purpose of these contacts in relation to the business relationship that was created, together with the future consequences of the contract, that inform the due process analysis. The text messages and calls merely serve as additional evidence that Defendants pursued a business relationship with an Oklahoma business. *See Benton v. Cameco Corp.,* 375 F.3d 1070, 1080 (10th Cir. 2004); *see also Pro Axes*, 428 F.3d at 1278 (looking to phone calls and letters and determining that "[w]hile the quantum of contacts between the parties is not determinative of personal jurisdiction, the purposeful availment reflected in the content of these communications support[ed] [an] exercise of jurisdiction").

As the Tenth Circuit recognized in *Benton v. Cameco Corp.,* the determination of whether personal jurisdiction exists depends on the facts of each case. In *Benton*, the Tenth Circuit held that sufficient minimum contacts had been established where transactions contemplated under a contract would be performed in the forum state, payments would be made to one of the parties in the forum state, significant correspondence was sent to the forum state, and employees were sent to the forum state to conduct due diligence. *Benton,* 375 F.3d at 1076.

The defendant in *Benton* argued that it did not conduct business in the forum state, that none of the utilities supplied by the plaintiff were in the forum state, that the execution

of the contract in the forum state was insufficient to establish minimum contacts, and that the brief presence in the state to conduct due diligence was insufficient to establish purposeful availment. *Id*. Defendants here raise similar arguments, but the Tenth Circuit's conclusion in *Benton* proves controlling: "[b]y engaging in a business relationship with [Plaintiff], who operates his business from [Oklahoma]," Defendants have "purposefully avail[ed] themselves of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (citing *Burger King*, 471 U.S. at 475).

The instant motion—as the panel in *Benton* noted is often the case—presents a close call. But the facts at hand, in light of binding precedent, lead the Court to the conclusion that Defendants have established sufficient minimum contacts with the forum state to satisfy the requirements of due process under the Constitution.

### B. *Reasonableness*

Although necessary, minimum contacts alone are insufficient. The second step in the analysis is to establish that the exercise of personal jurisdiction over a non-resident defendant is reasonable.

The reasonableness test is one where the defendant bears the burden of proof. The defendant must mount a "compelling case" to show that exercising jurisdiction in his or her case would be unreasonable. *Burger King,* 471 U.S. 462 at 477. The reasonableness component may be defeated if the defendant can show that jurisdiction somehow violates "traditional notions of fair play and substantial justice" by showing that it would impose a

grave inconvenience. *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

The Supreme Court has outlined the following "reasonableness factors": (1) the burden on the defendant; (2) interests of the forum state; (3) a plaintiff's interest in obtaining relief; (4) the most efficient resolution of controversies; and, (5) the "shared interests of the several States in furthering fundamental substantive social policies." *Asahi Metal Industry Co. v. Superior Court of Calif., Solano Cty.*, 480 U.S. 102, 113 (1987).

In *Asahi Metal Industry,* the Supreme Court found that the reasonableness factors weighed against the exercise of personal jurisdiction over a foreign defendant. *Id.* at 114. In *Asahi*, a Taiwanese defendant company was seeking indemnification from a Japanese company in a case brought by a California plaintiff. *Id.* at 115. When the plaintiff dropped the case, the Court had before it only an indemnity claim between the two foreign corporations. *Id.*

Defendants in the instant case argue that even if minimum contacts were established, it would be unreasonable—because it would offend traditional notions of fair play and substantial justice—for them to be subjected to the Court's exercise of personal jurisdiction.

First, Defendants argue this is so because Plaintiff allegedly pursued Defendants to negotiate the contract for Plaintiff's services. Brogdon Dec. [Doc. No. 13-1] at ¶¶ 8–9. Moreover, Plaintiff allegedly breached the contract first by failing to provide the necessary personnel to race competitively. *Id.* at ¶¶ 16–17. Plaintiff's failure to provide the necessary personnel is what ultimately led to the breakdown in the relationship between the parties,

precipitating this lawsuit. *Id*. at ¶¶ 20–21. Defendants also argue that many key witnesses, documents, and materials relevant to the litigation are in Texas. *Id*. at ¶ 24.

As the Tenth Circuit has established, where minimum contacts are weak, the reasonableness analysis takes on more importance. *Benton*, 375 F.3d at 1081. "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]." *Id*.

### i. Defendants' Burden

In *Benton*, most of the reasonableness factors weighed against the exercise of jurisdiction. *Id*. The burden placed on the defendant in *Benton* by having it litigate in the forum state, Colorado, was especially heavy. The defendant in *Benton* was Canadian, and the contract at issue specified that Canadian law would apply to resolve the dispute. The defendant had no office or property in Colorado. *Id*. at 1078. The corporation "[would] not only have to travel outside their home country, they [would] also be forced to litigate the dispute in a foreign forum unfamiliar with the Canadian law governing the dispute." *Id*.

Defendants here face no such burden. Texas and Oklahoma, of course, are neighboring states, and Defendants have demonstrated their ability to travel to the forum when they visited for purposes related to the agreement at issue. Although the parties have made no reference to a governing choice-of-law clause, and the Court can locate none,

there is no indication that unfamiliar law would have to be interpreted by the Court to resolve the dispute.

This factor weighs in favor of an exercise of personal jurisdiction being reasonable under the circumstances.

### ii. Interests of the Forum State

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *Id.* "The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's laws." *Id.*

This factor weighs in favor of exercising personal jurisdiction, as Plaintiff is an Oklahoma limited liability company. Further, considerations of what law would apply do not strongly militate against the exercise of jurisdiction in this forum.

### iii. Plaintiff's Interest in Convenient and Effective Relief

This factor hinges on whether a plaintiff may receive convenient and effective relief in another forum. This factor "may weigh heavily in cases where a plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." *Id.* at 1097.

Here, Defendants argue that Plaintiff catalyzed the litigation. There is nothing about having to litigate in Texas that would greatly diminish Plaintiff's recovery, nor would the pursuit of the lawsuit be foreclosed if Plaintiff had to litigate the claims in the neighboring

state. This is particularly true since Defendants argue Plaintiff initiated the negotiations between the parties, which ultimately led to the formation of the contract.

This factor does not weigh heavily in favor of either party.

### iv. Interstate Judicial System's Interest in Obtaining Efficient Resolution

This factor asks "whether the forum state is the most efficient place to litigate the dispute." *Id.* "Key to the inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *Id.* (citations omitted).

Based on the nature of Plaintiff's claims against Defendants, some of the witnesses necessary to the resolution of the dispute are in Texas. Plaintiff need not litigate the action in Oklahoma to avoid piecemeal litigation. *Id.* Therefore, the Court finds that litigating the dispute in Oklahoma would not necessarily be more efficient than in Texas.

This factor does not weigh heavily in favor of either party.

### v. States' Interest in Furthering Fundamental Substantive Social Policies

The fifth factor of the reasonableness inquiry "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations." *Id.*

Here, there is nothing about the exercise of personal jurisdiction over Defendants that would affect the social policy interests of other states, and unlike *Benton*, this case

does not traverse into the delicate space of international disputes. As with the previous two factors, this one does not weigh heavily in favor of either party.

On balance and considering all factors that inform the reasonableness analysis, the Court finds an exercise of personal jurisdiction over Defendants would be reasonable. Because minimum contacts have likewise been established, Defendants are constitutionally amenable to suit in Oklahoma. The Court now turns to Defendant's arguments on whether a transfer of venue would be appropriate.

### III. Defendants' motion to transfer venue is denied, as Defendants have failed to establish the existing forum is inconvenient.

Defendants next move the Court to transfer the case to the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1404(a).

Defendants assert that because Plaintiff failed to directly respond to this motion, the Court should deem the motion confessed pursuant to LCvR7.1(g) ("Any motion that is not opposed within 21 days may, in the discretion of the court, be deemed confessed."). *See Hubbs v. Wade*, No. Civ-17-606-D 2017 U.S. Dist. LEXIS 203153, at *5 (W.D. Okla. Nov. 21, 2017), *R&R adopted*, 2017 U.S. Dist. LEXIS 202394 (W.D. Okla. Dec. 8, 2017).

Although the Court will take into consideration that Plaintiff did not directly address the argument in its briefing, the Court notes that the burden here falls on Defendants. And there is significant overlap between the points Plaintiff raised in response to Defendants' assertion that personal jurisdiction was lacking and the factors the Court must consider in determining whether a transfer of venue is proper.

14

"The 'party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient.'" *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)). The court of appeals has directed district courts considering a § 1404 transfer to weigh the following discretionary factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[ ] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id*. Generally, the first factor weighs heavily against a transfer; "the plaintiff's choice of forum should rarely be disturbed" unless the balance of factors strongly favors the movant. *Id*. at 1167–68 (quoting *Scheidt*, 956 F.2d at 965). Exceptions to this rule have, however, been widely recognized. To be sure, courts may "accord little weight to a plaintiff's choice of forum where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Id*. at 1168.

In this case, Plaintiff, with its principal place of business located in the forum, clearly prefers for the case to remain in a federal court in Oklahoma. The Court notes that, contrary to Defendants' assertions, the contracts clearly have some connection to Oklahoma, as demonstrated by Plaintiff's effort to establish personal jurisdiction here. Motion at 9. That connection, as the Court noted above, is somewhat tenuous.

Nevertheless, Plaintiff's choice of forum weighs in favor of retaining the case in this district.

Upon careful consideration, the Court finds the movants have failed to meet their burden to show the requested transfer should be granted. Certainly, the movants contend—and no party disputes—that the alleged breaches of contract occurred outside of Oklahoma. Motion at 10. Both parties assert the other was responsible for effectuating the breach. Several material witnesses to the alleged issues are in Houston, Texas. Plaintiff, however, in its response to Defendants' assertion that personal jurisdiction was lacking, noted that other potential witnesses reside in Oklahoma. It would be no more convenient for those Oklahoma-based witnesses to travel to the Southern District of Texas than it would be vice-versa. A transfer would, therefore, do nothing to enhance the overall convenience of witnesses, nor have Defendants otherwise shown how the transfer would advance the interests of justice.

## CONCLUSION

In short, the Court can exercise personal jurisdiction over Defendants, and Defendants have failed to meet their burden of establishing that the existing forum is inconvenient. The Court finds that the motion should be denied.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Transfer Venue [Doc. No. 13] is DENIED.

**IT IS SO ORDERED** this 10th day of January, 2020.

TIMOTHY D. DeGIUSTI
Chief United States District Judge